## Gordeck v. Gordeck

*Charles M. Bowman.* for libellant.

COUGHLIN, J., March 24, 1934.—According to the files before us, a subpœna in divorce issued in the aforesaid case on October 9, 1930, returnable November 10, 1930. A deputy sheriff certified that on November 12, 1930, he served the writ upon the respondent, mentally ill, by handing her committee, Philip Kane, a true and attested copy of the writ. It appears that the allowance of a subpœna had been obtained from the court on March 22, 1930.

The libel was filed in the prothonotary's office later, on October 9, 1930. On October 20, 1930, a petition was presented to the number and term in the divorce suit, averring that there was no committee of her person upon whom the service of the subpœna in divorce could be made as provided by section 30 of the Act of May 2, 1929, P. L. 1237, whereupon it requested the appointment of a committee, with the apparent purpose of serving papers in the divorce action. One of the judges of our court appointed one of our lawyers a committee of the person of Anna Gordeck. James Stack was subsequently appointed master in divorce. We find testimony in the files, unsigned, taken before James M. Stack.

The files then show a paper filed April 8, 1932, in which Nicholas Curcio was appointed as master, and the appointment of James M. Stack as master revoked.

On August 18, 1932, the petition of libellant, through his attorney, was filed, setting forth that the respondent is an inmate of the Danville State Mental Hospital at Danville, Montour County, Pa., setting forth a desire to take testimony of members of the staff of said hospital who might have knowledge of her mental condition, and seeking an order, which was allowed, for the master to take their testimony in Montour County. Notice of hearing to Philip P. Kane, committee, to take testimony by the master appears in the file, fixing April 23, 1932, as the time, and 519 Miners Bank Building, Wilkes-Barre, Pa., as the place for taking of testimony. According to the files and testimony, no attention was paid to the proceedings by the so-called committee.

Testimony was taken, at which time nobody appeared in behalf of respondent. From the testimony of the libellant's husband, Stanley Gordeck, we gather the following facts:

Libellant and respondent were married April 11, 1920. The parties were both born and have continuously lived in Pennsylvania. Following marriage, they resided in Luzerne County. The wife, at the time of hearing, was confined to the Danville State Hospital for the Insane. She had been confined there for 8 years, her confinement being at the instance of the Overseers of the Poor of Huntingdon Township. She was removed there in May 1924, approximately 4 years after marriage. She was released on furlough of 3 months, residing with libellant, but was returned to the hospital. During the 4 years of married life, two children were born. The dates of their birth do not appear, but in May 1932, the date of hearing, one was 10 years of age. From this we infer she was born in 1922; the other was 7 years of age, from which it would follow that she was born in 1925. She was in fact born in 1924.

According to the testimony of the libellant, the cruel and barbarous treatment complained of occurred during these 4 years when he was cohabiting with his wife and she bearing children to him. The course of conduct referred to in the testimony, if believed, though subject to criticism of generalities in some respects, would indicate a weak mind or might indicate a vicious one, if the party were well. It is not contradicted by respondent, she having been in the hospital for the insane for 8 years and unable to testify. From the testimony, she had left libellant several times, but each time she returned, and the parties continued to cohabit. She returned to the home on furlough from hospital, at which time she gave birth to the second child. She had been confined in June 1924 to the hospital, but was sent back home in September and the second child was born in the home.

Another witness not called before the first master, but called before the second, testified he was at litigants' home in 1922 and that the house was not clean; diapers were lying around and libellant's meals were not ready; that once libellant dried the baby, and respondent hit libellant on the shoulder and used vile names. He also heard her say she never cared for him—would like to get rid of him. Again, in 1923, when they were cultivating corn, there was nothing prepared for meals; the house was dirty, and the table packed with dirty dishes. At that time she called him bad names. Again in 1923, he heard respondent say that she was going to drown the child. At another time, she turned off the victrola when the libellant had it going. At that time, she called him names and threw something at him.

The other testimony consists of medical testimony. It was to the effect that she had been admitted to the hospital on June 12, 1924, and was still a patient

there. The doctor testified that at the time of her admission the circumstances given were that she had periods of melancholy—took no interest in things about her—was unclean in her habits, and suffered from hallucinations and showed suicidal tendencies.

She was committed in a legal manner, being examined by two licensed physicians. She was diagnosed as suffering from psychosis with parkinsonian syndrome. Since confinement, there has not been mental or physical improvement, and recovery is very unlikely. Medical testimony was that she would require a further period of institutional care. At the time of the hearing, she was infirm and a bed patient, requiring much attention. She was unable to feed herself or dress herself.

Condonation is a bar to divorce on the ground of prior cruel and barbarous treatment. Conjugal intercourse after the wife has left the husband is persuasive evidence of condonation but not conclusive in itself, as in the case of adultery. A reconciliation does not have the effect of a condonation in the sense of cancelling the existence of facts well known to both parties in the case of cruel and barbarous treatment, since reconciliation may be in the hope and expectancy of different course of treatment. Cruel and barbarous treatment continuing, the former acts may not necessarily be condoned.

In this case the children were conceived in the very latter part of the period complained of, according to the testimony taken before the first master. Respondent, even if leaving for short periods of time, returned, and the cohabitation continued. As far as the testimony is concerned, we find no reason or explanation for her leaving him; no reason or explanation for her return, except her unfortunate mental illness. We do find she was removed to the mental hospital. After the lapse of 6 years, proceedings are started, and now 9 years have elapsed.

Baughman v. Baughman, 34 Pa. Superior Ct. 271, decided the Act of April 18, 1905, P. L. 211 (now repealed), does not make hopeless insanity a ground for divorce, yet it recognizes the fact that, under the statute and the act to which it is a supplement, a divorce proceeding may be begun for or against an insane person where there is cause for divorce prior to the insanity, that case holding that divorce, where there is cause for it, is the plaintiff's right. That is the status of the law at the present time.

The proceedings here are irregular. Service upon the committee of one mentally incompetent appears after the return date. The service upon the alleged committee is but a vain and ridiculous gesture to which no attention was paid. The testimony indicates respondent's illness, but does not reach the standard establishing cause for divorce. He who alleges a cause for divorce has the burden of establishing it under legal proceedings in accordance with the law. Here the proceeding is irregular. It lacks the semblance of a hearing to establish facts, as contemplated by the law. Under the pleadings and the testimony, dismissal should have been recommended, and we so find. Therefore, petition for decree in divorce is refused.     From Frank P. Slattery, Wilkes-Barre, Pa.